USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/30/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
 :
RICHARD PU, :
 :
                        Plaintiff, :
 : 15-CV-3936 (VSB)
        - against - :
 : **MEMORANDUM & OPINION**
RUSSELL PUBLISHING GROUP, LTD., :
 :
                      Defendant. :
 :
-----------------------------------------------------------X

Appearances:

Richard Pu
New York, New York
*Plaintiff Pro Se*

Alexander D. Widell
Moritt Hock & Hamroff LLP
Garden City, New York
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Before me is the motion of Russell Publishing Group, Ltd. ("Defendant" or "RPG") for contractual attorney's fees and costs, (Doc. 60), as well as the parties' briefs filed at my request concerning whether or not I should impose attorney's fees and costs for sanctionable conduct under Rule 11. For the reasons that follow, Defendant's motion for contractual attorney's fees and costs, (Doc. 60), is GRANTED, and the total recovery is $49,367.64. Because I grant Defendant's motion for contractual attorney's fees and costs, I do not separately decide whether fees and costs would be warranted under Rule 11.

## I. Background[1]

Plaintiff, an attorney proceeding pro se, represented Defendant in a previous litigation which settled, and in which he received attorney's fees pursuant to and from that settlement. Plaintiff also received reimbursement for expenses from Defendant. After the settlement, Plaintiff initiated this action (1) alleging that he was owed an additional amount for a previously undisclosed unpaid reimbursement in connection with the prior litigation, and also (2) requesting reformation of the terms of the Retainer Agreement such that he would receive an additional payment of $100,000.

On September 2, 2016, I issued a decision granting Defendant's motion for judgment on the pleadings. (Doc. 52.) In the September 2016 Decision, I noted that Plaintiff's claims were "frivolous, and the prosecution of the case undertaken in an effort to harass his former client." (*Id.* at 23.) In accordance with Rule 11, I therefore ordered Plaintiff to show cause as to why I should not award costs and fees to Defendant. (*Id.*) I further noted that Defendant is entitled to costs and fees by the terms of the Retainer Agreement, and explained that my ruling that Plaintiff show cause as to why Defendant should not be awarded costs and fees as a Rule 11 sanction does not preclude Defendant, as the prevailing party, from seeking enforcement of the fees provision in the Retainer Agreement. (*Id.* at 23 n.18.)

## II. Procedural History

Following the September 2016 Decision, on September 8, 2016, Plaintiff filed his "initial brief" in response to my order to show cause as to why sanctions should not be imposed, (Doc. 58), as well as a declaration in support thereof, (Doc. 59). Defendant filed its brief in support of

---

[1] Capitalized terms not otherwise herein defined are given the meaning ascribed to them in my September 2, 2016 decision (the "September 2016 Decision"). (Doc. 52.) A more detailed background of this action can be found in the September 2016 Decision.

imposing Rule 11 sanctions on October 11, 2016, (Doc. 73), along with an accompanying declaration with exhibits, (Doc. 74). Plaintiff filed his reply on October 31, 2016, (Doc. 85), along with a declaration and exhibit, (Doc. 84).

On October 7, 2016, Defendant filed its motion papers for attorney's fees and costs under the terms of the Retainer Agreement. (Docs. 60–62.) Plaintiff filed his opposition papers on October 12, 2016, (Docs. 77–78), and Defendant filed its reply papers on October 14, 2016, (Docs. 79–80). On October 14, 2016, Plaintiff requested leave to file a sur-reply, (Doc. 81), and I denied his request on October 17, (Doc. 82).

### III. Contractual Attorney's Fees and Costs

#### A. *Applicable Law*

Under New York law, a prevailing party may collect attorney's fees if the "award is authorized by agreement between the parties, statute or court rule." *U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, No. 12 Civ. 9412 (PAE), 2016 WL 4368377, at *3 (S.D.N.Y. Aug. 12, 2016) (quoting *Hooper Assocs. Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491 (1989)). Courts infer a party's intention to provide for attorney's fees in relation to litigation arising out of a breach of contract only if "the intention to do so is unmistakably clear from the language of the contract." *Id.* (quoting *Bank of N.Y. Trust Co., N.A. v. Franklin Advisors, Inc.*, 726 F.3d 269, 283 (2d Cir. 2013)). If there is an enforceable contractual fee-shifting provision, "the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *Id.* (quoting *F.H. Krear & Co. v. Nineteen Names Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987)).

#### B. *Application and Calculation*

Here, the Retainer Agreement explicitly provides that "[i]n the event that [Richard Pu,

3

Esq.] maintains an action or proceeding to enforce [his] rights hereunder, the prevailing party shall be entitled to recover its reasonable attorney['s] fees and disbursements." (Retainer Agreement ¶ 10.)[2] The language of the Retainer Agreement is clear that RPG as the prevailing party is entitled to an award of attorney's fees and costs. *See Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) ("When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms."). Indeed, Plaintiff's opposition does not appear to dispute that the Retainer Agreement evinces a clear intention to provide for fees and costs. (*See generally* Pl.'s Opp.)[3]

I therefore turn to whether the requested $48,893 in attorney's fees and $1,299.64 in costs is reasonable. (*See* Def.'s Mem. 3; Widell Decl. ¶ 13.)[4] In support of the requested attorney's fees, defense counsel outlines his extensive experience, details the relatively low hours in comparison to the length of time the case has been pending, and cites the amount at issue in the litigation as well as the ultimate results achieved. (Def.'s Mem. at 6–8).

Fee awards in the Second Circuit are generally calculated "'under the lodestar method'– sometimes referred to as the 'presumptively reasonable fee' method." *Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10 Civ. 1853 (PGG), 2011 WL 1002439, at *4 (S.D.N.Y. Mar. 16, 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany Cty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008)), *aff'd*, 483 F. App'x 634 (2d Cir. 2012). In applying the lodestar method, courts first calculate the "lodestar" amount by multiplying the reasonable number of hours worked on the case by a reasonable hourly rate of

---

[2] "Retainer Agreement" refers to the Retainer Agreement entered into by Plaintiff and RPG, attached as Exhibit B to the Declaration of Alexander D. Widell. (Doc. 61-2.)

[3] "Pl.'s Opp." refers to Plaintiff's Opposing Brief. (Doc. 78.)

[4] "Def.'s Mem." refers to the Memorandum of Law in Support of Defendant's Motion for an Award of Contractual Attorneys' Fees. (Doc. 62.) "Widell Decl." refers to the Declaration of Alexander D. Widell. (Doc. 61.)

4

compensation, and then adjust the lodestar based upon case-specific considerations. *See Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008). "The determination of reasonable hourly rates is a factual issue committed to the court's discretion, and is typically defined as the market rate a 'reasonable, paying client would be willing to pay.'" *Amaprop*, 2011 WL 1002439, at *6 (quoting *Arbor Hill*, 522 F.3d at 184). "In determining what rates are reasonable, a court should rely both on evidence as to the rates counsel typically charges, and its own knowledge of comparable rates charged by lawyers in the district." *Id.* (internal quotation marks and citation omitted). The size of the firm may be a factor "if it would affect the hourly rate, 'primarily due to varying overhead costs.'" *Id.* (citation omitted).

I turn first to defense counsel's customary rate, as well as the market rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). Defense counsel requests fees ranging from $550 per hour to $570 per hour for work completed by counsel, who has practiced for over twenty five years and is a partner in a law firm, as well as $105 per hour for 2.9 hours of work completed by a paralegal. (Def.'s Mem. 5–6.) As per Defendant's engagement letter with defense counsel, defense counsel's firm charges rates ranging from $290 per hour for junior associates to $695 per hour for senior partners; defense counsel's rate was identified as a "current rate" of $550 per hour. (*See* Widell Reply Dec. Ex. C.)[5] Defense counsel further states that his rates were "at or below [the firm's] customary rates," (Widell Decl. ¶ 15), and attaches his biography detailing his years of experience, (*id.* ¶ 16, Ex. D). Finally, Defendant cites to myriad cases in this District awarding partners similar or higher hourly rates. (Def.'s Mem. 5–6.) Therefore, and upon

---

[5] "Widell Reply Decl." refers to the Reply Declaration of Alexander D. Widell. (Doc. 80.)

considering the relevant factors, I find defense counsel's hourly rate of $550 per hour to $570 per hour reasonable. *See, e.g.*, *Amaprop*, 2011 WL 1002439, at *5–6 (fees of $616 per hour approved for partner with less than twenty five years of experience at larger firm); *Merck Eprova AG v. Gnosis S.P.A.*, No. 07 Civ. 5898 (RJS), 2011 WL 114929, at *9 (S.D.N.Y. Mar. 17, 2011) ("Seasoned trial attorneys have been routinely awarded fees at rates of between $250 and $600 in this District.").

I turn next to the reasonableness of the hours billed. Here, defense counsel billed 89.5 hours in a ten-month period, including 2.9 hours of paralegal time. (*See* Def.'s Mem. 7–8.) In examining the contemporaneous time records submitted in support of Defendant's application, (Widell Decl. Ex. C), it is clear that, with one exception, defense counsel's hours were reasonable and commensurate to the tasks completed.[6] Defense counsel candidly acknowledges that he erroneously billed Defendant for 1.5 hours. (Def.'s Reply 9 n.4.)[7] As such, I exclude the amount billed for that 1.5 hours of time—$825—from Defendant's total requested award of attorney's fees, leading to a total recovery of $48,068. *See Amaprop*, 2011 WL 1002439, at *7 (excluding "'excessive, redundant or otherwise unnecessary hours' from the calculation" (quoting *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999))).

Finally, Defendant seeks $1,299.64 in costs, which includes photocopying costs, mailing costs, court filing and transcript fees, and legal research charges. (Widell Decl. Ex. C.) Plaintiff challenges the costs charged for legal research services and photocopying. (*See* Pl.'s Opp. 7.)

"Attorney's fees awards include those reasonable out-of-pocket expenses incurred by

---

[6] In this sense, I disagree with Plaintiff's argument that "the number of hours spent on some projects was excessive." (Pl.'s Opp. 7.)

[7] "Def.'s Reply" refers to Defendant's Reply Memorandum of Law in Further Support of its Motion for an Award of Contractual Attorneys' Fees. (Doc. 79.)

attorneys and ordinarily charged to their clients." *Amaprop*, 2011 WL 1002439, at *9 (citation omitted). Computer research fees are compensable if a firm regularly bills its clients for the use of those services, although a court may deny compensation if defendants fail to adequately document the legal research charges, such as by failing to provide invoices from the service. *See id.* (citation omitted). Photocopying costs are also recoverable as long as the party "make[s] clear what documents were copied, how many copies were made, the cost per page charged for copying, and why the copies were necessary." *Id.* (citation omitted).

I find the entirety of Defendant's requested costs reasonable. Here, Defendant's engagement letter with counsel clearly notes that the firm charges for certain costs and expenses, including, but not limited to, "computerized legal research" and "copying." (Widell Reply Decl. Ex. C.) Furthermore, in the contemporaneous billing records provided, defense counsel includes the invoice numbers for the legal research charges, as well as the quantity of pages and price per page for the photocopying costs. (Widell Decl. Ex. C.) Additionally, although Defendant has not made clear "what documents were copied" or "why the copies were necessary," Plaintiff does not contend that the photocopies were made for any purpose other than in furtherance of this litigation, and defense counsel further provides the dates on which these photocopies were made, most of which correspond precisely to the dates identified in the billable time charges. (*See id.*) As such, Defendant's requested costs of $1,299.64 are approved, leading to a total of $49,367.64 in attorney's fees and costs.[8]

---

[8] Plaintiff also argues that Defendant's motion is untimely. (Pl.'s Opp. 2–3.) Putting to the side the issue of whether a timeliness argument is proper in the context of a motion for contractual attorney's fees, I find Plaintiff's position unmeritorious, given my order that the parties agree to a briefing schedule as to the order to show cause and subsequent notation as to Defendant's right to move for contractual attorney's fees, (Doc. 52 at 23 & n.18), Plaintiff's submission of an agreed-upon briefing schedule for the order to show cause on September 7, 2016, (Doc. 54), and Defendant's later confirmation with Chambers that, given the related nature of the issues involved, it should follow the same briefing schedule on its motion for attorney's fees.

## IV. Rule 11 Sanctions

Federal Rule of Civil Procedure 11 "permits the imposition of sanctions when an attorney signs a pleading that is interposed for an improper purpose without reasonable inquiry or without grounds justifying the argument advanced." *Fox v. Boucher*, 794 F.2d 34, 37–38 (2d Cir. 1986). "Courts look with disfavor on [any] sort of unfounded spite action." *Id.* at 38. Additionally, when the litigant is an attorney, as here, sanctions are "particularly appropriate." *Id.* (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980)). Although I find here that Plaintiff acted "in bad faith, vexatiously, wantonly, and for oppressive reasons," *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975) (quoting *F.D. Rich Co. v. U.S. for Use of Indus. Lumber Co.*, 417 U.S. 116, 129 (1974)), given that I award attorney's fees and costs under the parties' Retainer Agreement, I need not reach the question of attorney's fees and costs under Rule 11.

## V. Conclusion

For the foregoing reasons, Defendant's motion for contractual attorney's fees and costs, (Doc. 60), is GRANTED, and Defendant is awarded $49,367.64 in attorney's fees and costs ($48,068 attorney's fees and $1,299.64 in costs). The Clerk of Court is respectfully directed to terminate the open motion at Document 60.

SO ORDERED.

Dated: September 30, 2017
New York, New York

Vernon S. Broderick
United States District Judge